**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-1821**

WANRONG LIN,

              Petitioner,

         v.

ERIC H. HOLDER, JR., Attorney General,

              Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued:  September 22, 2011          Decided:  October 28, 2011

Before DUNCAN, DAVIS, and DIAZ, Circuit Judges.

Petition for review denied by unpublished per curiam opinion.

**ARGUED:** Joshua E. Bardavid, LAW OFFICE OF JOSHUA BARDAVID, New York, New York, for Petitioner.  Kiley L. Kane, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:** Theodore N. Cox, New York, New York, for Petitioner. Tony West, Assistant Attorney General, Civil Division, Jennifer L. Lightbody, Senior Litigation Counsel, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Petitioner Wanrong Lin seeks review of the decision of the Board of Immigration Appeals ("BIA" or "Board") denying his motion to reopen. We deny the petition for review.

I.

Lin is a native of the People's Republic of China who entered the United States without inspection. After his arrival, Lin married a U.S. citizen; they have three children who are U.S. citizens. On January 3, 2007, the Department of Homeland Security served Lin with a Notice to Appear, charging him as removable under 8 U.S.C. § 1182(a)(6)(A)(i). During his removal proceedings before an Immigration Judge ("IJ"), Lin filed an application for asylum, withholding of removal, and relief pursuant to the United Nations Convention Against Torture.

The IJ held a hearing on the merits of Lin's asylum-related applications on March 10, 2008, during which Lin was represented by counsel and had the assistance of a Mandarin-language interpreter. Lin testified that he feared persecution if he was returned to China because his family size violated China's family planning policies. Lin submitted several identification documents for himself, his wife, and his two daughters (Lin had a third child, a boy, after his asylum application was submitted). Lin failed, however, to submit evidence regarding

2

country conditions and family planning policies in China. Moreover, though he claimed to have evidence supporting his father's past persecution for family planning violations related to his own birth, Lin did not submit such evidence to the IJ, nor did Lin's father (who lives in the U.S.) testify on his behalf.

Lin's applications were denied on March 10, 2008, and his removal to China was ordered. The IJ found not credible Lin's testimony regarding his father's arrest because of Lin's birth and Lin's detention (while in fourth-grade) by authorities; the testimony was inconsistent with his asylum application and uncorroborated by any objective evidence. Accordingly, there was no evidence of past persecution to support Lin's asylum request.

With respect to Lin's claim based on possible future persecution (based, in turn, on the birth of his U.S.-born children) the IJ found that Lin had "submitted absolutely no documentation whatsoever" in support of his claim. J.A. 873. The IJ asserted she was bound by prior precedential BIA decisions that had denied claims similar to Lin's, noting that the Board had previously found that Chinese citizens from Fujian Province (Lin's Province) who have a second child outside of China are penalized, if at all, by fines or economic penalties, which do not generally support a claim of future persecution. (Lin's third child had not yet been born). The IJ also noted that the

3

Board found that enforcement of family planning in Fujian Province has been "lax and uneven." J.A. 874. The IJ found that Lin had failed to meet his burden of proof for his asylum claim and thus necessarily failed to meet the higher burden required for withholding of removal. The IJ also denied Lin's claim under the Convention Against Torture because Lin had failed to establish that it is more likely than not that he would be tortured if removed to China, due to the lack of corroborating evidence and Lin's lack of credibility.

Lin filed an appeal with the BIA, which affirmed all of the credibility and evidentiary findings of the IJ, as well as the order of removal. Lin did not file a petition for review of the Board's decision with this court.

## II.

On February 18, 2010, Lin filed a motion to reopen his asylum claim with the BIA, arguing that changed country conditions based on previously unavailable documents established that he would face fines and forced sterilization if repatriated. Lin asserted that he would be subject to China's family planning policies on return and that coercive practices were widely used in Fujian Province to implement these policies. Lin also criticized the BIA's reliance on the Department of

4

State Country Profiles and the BIA decisions that had relied on those reports.

The BIA denied Lin's motion to reopen. The denial noted that Lin's motion was not accompanied by an affidavit, and that several of Lin's documents had been previously submitted to the Board, had not been properly authenticated, were incomplete, or had previously been considered by the Board in precedential decisions. The Board rejected Lin's argument that because the Board had granted a motion to reopen based on the same documents in an unrelated case, the Board should do so in Lin's case. Finally, the Board rejected Lin's argument that the Country Profile the IJ had referenced was unreliable, finding Lin had failed to demonstrate that his expert had sufficient qualifications to make such a determination.

Lin now petitions this court to reverse the Board's denial of his motion to reopen. This court has jurisdiction pursuant to 8 U.S.C. § 1252(a)(1).

III.

Appeals from denials to reopen a case before the BIA are reviewed for abuse of discretion. Barry v. Gonzales, 445 F.3d 741, 744 (4th Cir. 2006) (citing INS v. Doherty, 502 U.S. 314, 323-24 (1992)). "The BIA's denial of a motion to reopen is reviewed with extreme deference, given that motions to reopen

5

are disfavored [because] every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." Id. at 744-45. (internal quotation marks and citations omitted). "Thus, we will reverse the BIA's decision for abuse of discretion only if it is arbitrary, capricious, or contrary to law." Id. at 745 (internal quotation marks and citations omitted).

An alien may file only one motion to reopen, which must be filed within 90 days of the date of the final administrative decision. 8 C.F.R. § 1003.2(c)(1). The motion must state new facts that will be proven at a hearing if granted and must be supported by affidavits or other evidentiary material. 8 C.F.R. § 1003.2(c)(1). Such evidence must be material and must not have been available at the previous hearing. 8 C.F.R. § 1003.2(c)(1). The Board has discretion to deny a motion to reopen even if the moving party has made out a prima facie case for relief. 8 C.F.R. § 1003.2(a).

Because Lin's motion to reopen his asylum claim relies on evidence that was previously available, unauthenticated, or insufficiently corroborated, we hold that the BIA did not abuse its discretion in denying his motion to reopen. We therefore deny Lin's petition for review.

Lin's primary contention is that the BIA abused its discretion in failing to consider his individualized evidence.

6

In particular, he points to the BIA's refusal to consider documents that had not been properly authenticated, its reliance on the 2007 State Department Profile, and its failure to address the 2009 Report by the Congressional-Executive Commission on China ("2009 Commission Report") in any detail. Lin argues that his supporting documents establish his prima facie eligibility for asylum based on changed country conditions, pointing in particular to the 2009 Commission Report and a Village Certificate, which he claims establishes that he is likely to face sterilization or the imposition of sanctions if returned to China. We hold that these claims, even if true, do not show that the BIA's decision met the "arbitrary, capricious, or contrary to law" standard. Barry, 445 F.3d at 744.

With respect to the issue of authentication, Lin argues that the BIA erred in dismissing foreign documents "solely because" they were not authenticated pursuant to regulation and ignored other authenticating evidence in the record. Br. of Pet. 32. However, in dismissing the Village Certificate and other foreign documents, the BIA cited both the regulation as well as BIA case law that specifically permits alternative means of authentication. In his motion to reopen, Lin noted that "there is no question as to the documents' authenticity because they are published on the Chinese government's official websites and are available to public access." J.A. 194. Yet, as Respondent

7

points out, Lin does not specify the documents to which he is referring and fails to provide a URL.

In his petition to this court, Lin contends that he has authenticated the Village Certificate by way of the Refugee Review Tribunal Research Response ("Tribunal Document"). J.A. 9-22. This argument was not in Lin's motion to reopen, and the document was only included in a packet of materials submitted after his motion was filed; furthermore it does not appear to support his claim, as the document expressly states that it is not to be cited to in any document and is not "conclusive as to the merit of any particular claim to refugee status or asylum." J.A. 9.

In the alternative, Lin appears to argue that the BIA should have provided him with an opportunity to authenticate the documents. While the opportunity to authenticate documents should not be dismissed lightly, when an individual seeks to reopen an asylum claim that has already been denied he bears the burden of showing materially changed conditions. See Qin Wen Zheng v. Gonzales, 500 F.3d 143, 148-49 (2d Cir. 2007) (holding that BIA did not abuse its discretion by declining to consider an unauthenticated document submitted with a motion to reopen to show changed country conditions); In re S-Y-G, 24 I&N Dec. 247, 251 n.2 (BIA 2007) (assuming authenticity of Petitioner's evidence, but emphasizing that movants need to demonstrate the

8

authenticity of their evidence). Here, Lin did not provide an affidavit with his motion that could have explained how he acquired the documents and any efforts made to authenticate them. The BIA found the lack of a sworn statement from Lin to be significant and we discern no abuse of discretion in that determination. Cf. Chen v. Attorney General, __ F.3d __ (3d Cir. 2011), No. 09-3459, 2011 WL 923353 (3d Cir. Mar. 18, 2011) (refusing to find BIA abused its discretion in dismissing village notice stating petitioner faced forcible sterilization if returned as unauthenticated, despite credible testimony from petitioner's mother on how she obtained the document).

Nor did the BIA abuse its discretion in relying on the 2007 State Department Profile and in rejecting the 2009 Commission Report as establishing changed country conditions. Lin argues that the BIA relied "exclusively on the 2007 Profile to the exclusion of the evidence" offered by Lin. Br. of Pet. 38. In its decision, the BIA made note of the 2009 Commission Report among the many other exhibits submitted by Lin, but noted that the "evidence indicates that social compensation fees, job loss or demotion, loss of promotion opportunity, expulsion from the party, destruction of property, and other administrative punishments are used to enforce the family planning policy." J.A. 4. While the 2009 Commission Report underscores the range of difficulties encountered by those who violate family planning

policies in China, it is unclear whether the report, without more, supports a claim that country conditions in Fujian Province have materially changed from the time of the BIA's 2009 decision in Lin's case, particularly in light of the long line of cases that have addressed this issue and found it to be worthy of individualized determinations. Compare Li Fang Lin v. Mukasey, 517 F.3d 685, 688 (4th Cir. 2008) (noting that Fujian Province "'has been known for being a place where the [one-child] policy has been enforced with special vigor'" and remanding on direct appeal), with Matter of J-W-S, 24 I&N Dec. 196, 193 (BIA 2007) (noting that enforcement of the policy in Fujian has been described as "'lax'" or "'uneven'" in sustaining DHS appeal of IJ's grant of asylum). See also Shao v. Mukasey, 546 F.3d 138, 142 (2d Cir. 2008) (affirming BIA approach of "case-by-case review"). The general conclusions of the 2009 Commission Report are insufficient to demonstrate the likelihood of enforcement against Lin specifically.

Moreover, to the extent that the 2009 Commission Report suggests that conditions have changed in Fujian, Lin fails to show how such changes would affect him. The language of the 2009 Commission Report focuses on women in Fujian Province. As Respondent points out, Lin is male, and he has failed to provide any evidence to show how or why enforcement against women would affect him – he has not provided, for example, an affidavit

testifying that he intends to bring his wife and children, all U.S. citizens, with him when he returns.

Lin also argues that he is likely to face fines that amount to economic persecution and potentially even imprisonment if returned and that such a threat constitutes changed country conditions. Br. of Pet. 30. However, Lin's failure to provide documentation of his financial situation makes it difficult to evaluate how such a threat might affect him, and thus the BIA's refusal to find that Lin faced a threat of economic deprivation was not an abuse of discretion. See Matter of T-Z, 24 I&N Dec. 163 (BIA 2007) (showing of economic sanctions does not amount to persecution where record fails to provide evidence of movant's financial situation).

IV.

The BIA considered the evidence presented by Lin and determined that it failed to carry sufficient weight, was insufficiently authenticated, or was duplicative. The BIA's exercise of discretion in discounting the 2009 Commission Report and continuing to rely on the State Department Country Profiles and its precedential decisions does not rise to the level of abuse required by law for reversal. Accordingly, the petition for review is denied.

PETITION FOR REVIEW DENIED

11